# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 37805

T.J.T., INC., a Washington corporation, )
)
    Plaintiff-Appellant, )
)
v. )
)
ULYSSES MORI, an individual, )
)
    Defendant-Respondent. )
——————————————————————— )
)

Boise, November 2011 Term

2011 Opinion No. 127

Filed: November 30, 2011

Stephen W. Kenyon, Clerk

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Ada County. The Honorable Ronald J. Wilper, District Judge.

The judgment of the district court is vacated, and the case is remanded.

Moffatt, Thomas, Barrett, Rock & Fields, Chartered, Boise, for appellant. Tyler J. Anderson argued.

Hawley Troxell Ennis & Hawley LLP, Boise, for respondent. John D. Ashby argued.

———————————————

J. JONES, Justice.

This is T.J.T., Inc.'s second appeal from a summary judgment in favor of Ulysses Mori, in which the district court found that the non-competition agreement Mori allegedly breached was unenforceable under California law. Because we find that the district court erred in failing to consider whether and to what extent the agreement could be "blue penciled" to make it enforceable, we vacate the summary judgment and award of attorney fees and remand the case for further proceedings.

## I.
## BACKGROUND

This case arises from the execution of a non-competition agreement between TJT and Mori in connection with the sale of Mori's business, Leg-It Tire Company, Inc., to TJT in 1997. Leg-It owned and operated one production facility in Woodland, California. The company's primary business was recycling tires and axles and then selling the recycled tires and axles to manufactured

1

home factories in Northern California, along with a factory in Colorado. Leg-It also sold "raw," or unrecycled, tires and axles to other recyclers and factories, and Mori testified that Leg-It operated in that business in some capacity in the eleven Western states.

TJT also operates in the tire and axle recycling business, and it had recycling facilities in Idaho, Oregon, and Washington at the time it purchased Leg-It in 1997. TJT now also operates a facility in Colorado. Mori sold Leg-It to TJT for $1 million in cash and stock. As part of the sale of Leg-It, Mori and TJT entered into three agreements on June 24, 1997: (1) Agreement and Plan of Merger; (2) Non-Competition Agreement; and (3) Employment Agreement. The Non-Competition Agreement prohibited Mori from competing in the recycled tire and axle industry "anywhere within 1000 miles of any facility owned or operated by [TJT] or Leg-it," for two years following the termination of his employment with TJT.

At the time of the sale of Leg-It, Mori was hired as the "Senior Vice President and General Manager of the Leg-it Tire Company Division of [TJT]." In 2000, Mori moved to Idaho and took a new position as Corporate Sales Manager. On February 7, 2007, Mori resigned as an employee of TJT and, on February 20, 2007, Mori was hired by West States Recycling, Inc., a competitor to TJT, as a tire and axle salesman. In his employment with West States, Mori facilitated the opening of a warehouse facility in Idaho to support local Idaho customers who purchase tires and axles, and also solicited tire and axle business in Oregon, Washington, California, and Idaho.

TJT filed its Complaint on June 1, 2007, seeking injunctive relief and imposition of a constructive trust, and asserting claims including breach of fiduciary duty, breach of contract on three separate grounds, breach of the implied covenant of good faith and fair dealing, and tortious interference on two separate grounds. Following a hearing on October 22, 2007, the district court issued an order denying TJT's motion for a preliminary injunction. On January 31, 2008, the district court denied TJT's request for partial summary judgment and granted Mori's motion for summary judgment in its entirety. The court held that the Non-Competition Agreement was void as a matter of California law[1] because: (1) it was tied to Mori's employment rather than the sale of his business, and such employment-related agreements are *per se* void under California law; (2) its durational scope was overbroad; and (3) its geographic scope was overbroad. On June 2, 2008, the district court entered an Order and Judgment awarding Mori his requested attorney fees and costs

---

[1] The non-competition agreement contains a choice of law provision nominating California law.

2

in the amount of $107,236.85.  It denied TJT's Motion for Reconsideration on November 21, 2008.

TJT appealed from the district court's summary judgment in favor of Mori for the first time on March 13, 2008, and this Court issued an opinion on March 26, 2010, determining that it lacked jurisdiction because the district court had failed to issue a final, appealable judgment.  *T.J.T., Inc. v. Mori*, No. 35079, 2010 WL 1136820 (Idaho March 26, 2010) (withdrawn).  This Court issued a substitute opinion for that appeal April 15, 2010, containing the same determination.  *T.J.T., Inc. v. Mori*, 148 Idaho 825, 230 P.3d 435 (2010).[2]  On remand, it appears there were no additional proceedings except one hearing held off the record May 4, 2010, the substance of which counsel could not clearly recount at oral argument.  The district court entered a final judgment May 10, 2010, and the parties subsequently submitted opposing memoranda of costs and fees.  TJT filed a new notice of appeal from that judgment on June 17, 2010.

**II.**
**ISSUES ON APPEAL**

I.  Whether the district court erred in granting summary judgment on the basis that the Non-Competition Agreement was void and, thus, unenforceable under California law.

II.  Whether the district court erred in concluding that California law permits Mori to recover attorney fees.

III.  Whether the district court erred in granting Mori attorney fees without considering the factors in I.R.C.P. 54(e)(3).

**III.**
**DISCUSSION**

**A.  Standard of Review**

"This Court reviews a motion for summary judgment pursuant to the same standards as the district court."  *Mackay v. Four Rivers Packing Co.*, 145 Idaho 408, 410, 179 P.3d 1064, 1066 (2008).  Summary judgment is appropriate where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  I.R.C.P. 56(c).  "[A]ll reasonable inferences that can be drawn from the record are to be drawn in favor of the nonmoving party," and disputed facts will be liberally construed in favor of the nonmoving

---

[2] The withdrawn opinion contained an instruction to the district court that it should consider TJT's argument that the non-competition agreement could be "blue penciled" on remand to make it enforceable.  *T.J.T., Inc.*, 2010 WL 1136820 (withdrawn).  Because this Court determined that the instruction was inappropriate in light of its lack of jurisdiction, we replaced the opinion with one containing only the jurisdictional determination.  *T.J.T., Inc.* 148 Idaho 825, 230 P.3d 435.  Now that this case is properly before us, we again take up the "blue pencil" issue.

3

party. *Mackay*, 145 Idaho at 410, 179 P.3d at 1066. "Summary judgment is appropriate where the nonmoving party bearing the burden of proof fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Id.* This Court reviews questions of law *de novo*. *Martin v. Camas County ex rel. Bd. of Comm'rs,* 150 Idaho 508, 511, 248 P.3d 1243, 1246 (2011).

>    **B.    The district court erred in determining that the Non-Competition Agreement was unenforceable as a matter of law, and a genuine issue of material fact remains as to whether it can be "blue penciled" to make it reasonable in geographic scope.**

TJT argues the district court's conclusion that the Non-Competition Agreement was unenforceable and its subsequent grant of summary judgment to Mori was based on a combination of legal errors and overlooked genuine factual disputes that should have precluded summary judgment. The district court based its determination that the agreement was void on its finding that the agreement was void under California law because it was: (1) linked to Mori's employment; (2) overbroad in duration; and (3) overbroad in geographic scope.

California Business and Professions Code § 16600 states: "Except as provided in this chapter, every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void." The statute "expresses California's strong public policy of protecting the right of its citizens to pursue any lawful employment and enterprise of their choice." *Dowell v. Biosense Webster, Inc.*, 179 Cal. App. 4th 564, 575, 1012 Cal. Rptr. 3d 1, 8 (Ct. App. 2009). The three primary exceptions to the prohibition on non-competition agreements include when the contract occurs in connection with the sale of the goodwill of a business, in the dissolution of a partnership, or when a member of a limited liability company agrees to not compete. *Id.*

California Business and Professions Code § 16601 deals with the exception involving the sale of the goodwill of a business, stating: "Any person who sells the goodwill of a business … may agree with the buyer to refrain from carrying on a similar business within a specified geographic area in which the business so sold … has been carried on, so long as the buyer … carries on a like business therein." The primary purpose of the statute "is to permit the purchaser of a business to protect himself or itself against competition from the seller which competition would have the effect of reducing the value of the property right that was acquired." *Monogram Industries, Inc. v. SAR Industries, Inc.*, 64 Cal. App. 3d 692, 701, 134 Cal. Rptr. 714, 720 (Ct. App.

4

1976). The full value of the acquisition includes the sold company's goodwill. *Alliant Ins. Services, Inc. v. Gaddy*, 159 Cal. App. 4th 1292, 1301, 72 Cal. Rptr. 3d 259, 267 (Ct. App. 2008).

> In the case of the sale of the goodwill of a business it is 'unfair' for the seller to engage in competition which diminishes the value of the asset he sold. In order to protect the buyer from that type of 'unfair' competition, a covenant not to compete will be enforced to the extent that it is reasonable and necessary in terms of time, activity and territory to protect the buyer's interest.

*Monogram*, 64 Cal. App. 3d at 698, 134 Cal. Rptr. at 718.

### 1. The district court erred in determining that the Non-Competition Agreement was impermissibly linked to Mori's employment with TJT rather than to the sale of Leg-It.

TJT first argues that the district court erred in determining that the Non-Competition Agreement was impermissibly linked to Mori's employment rather than the sale of Leg-It. Mori responds that it is more clearly tied to his employment, and thus unenforceable, because its duration and enforceability are tied to Mori's employment with TJT.[3] The district court held, "In reality, even though the non-compete agreement purports to be tied to Leg-It's goodwill, it is actually tied to Mori's employment."

As stated above, California Business and Professions Code § 16600 prohibits non-competition agreements based merely on an employment relationship, whereas section 16601 allows such agreements where they are executed to protect the goodwill of a business sold. However, California courts have held that a non-competition agreement can be incidentally linked to the seller's employment agreement with the buying business without offending section 16600. For example, in *Hilb, Rogal and Hamilton Insurance Services of Orange County, Inc. v. Robb*, Robb entered into a merger agreement and employment contract with the purchasing company. 33 Cal. App. 4th 1812, 1817, 39 Cal. Rptr. 2d 887 (Ct. App. 1995). The employment contract contained a covenant not to compete with a term extending for a three-year period after termination of Robb's employment. *Id.* The court held that neither the location of the covenant in the employment contract nor the durational link to the employment term affected the validity of the covenant, which was clearly executed in conjunction with the merger. *Id.* Similarly, the non-

---

[3] In support of this proposition, Mori relies on the fact that: (1) the non-competition term begins on the effective date of the merger and ends "two (2) years following [Mori's] termination of employment with [TJT]"; and (2) the agreement further provides that "it shall terminate and be of no further force and effect in the event [Mori's] employment with the Company is terminated without cause under Seller's Employment Agreement."

competition agreement in *Alliant* provided that the restrictions would "terminate upon the later of: (i) five (5) years after the Economic Effective Date or (ii) three (3) years after the effective date on which the Seller's employment, if any, with the Company, or its successors in interest, terminates …." 159 Cal. App. 4th at 1296, 72 Cal. Rptr. at 263. While the court in that case did not specifically address that provision, it did find that the agreement was valid. *Id.*

Here, although the Non-Competition Agreement indeed refers to Mori's employment with TJT to determine its duration and enforceability, cases like *Robb* and *Alliant* demonstrate that such incidental link does not necessitate the conclusion that it was an impermissible employment restriction. As in the cases discussed above, the employment relationship only came about as a part of the larger transaction between TJT and Mori—the sale of Leg-It.[4] As it is undisputed that the two businesses operated in the same line of business, the agreement is primarily linked to the protection of Leg-It's goodwill; thus, we find that the agreement is not *per se* unenforceable under sections 16600 and 16601.

### 2. The district court erred in determining that the Non-Competition Agreement was overbroad in duration because such agreements may last so long as the buying business carries on a like business.

TJT next argues that the district court erred in determining that the Non-Competition Agreement was overbroad in duration because the plain language of section 16601 and California case law allow such agreements to last as long as the buying business carries on a like business. Mori responds that because the Non-Competition Agreement was linked to Mori's employment term, and the Employment Agreement contemplated only a four-year employment term, the Non-Competition Agreement was not enforceable beyond six years (the employment term plus two years) under the terms of the Employment Agreement.[5] TJT argues that the two agreements were completely independent of one another, so the non-compete is unaffected by the Employment Agreement's term. The district court seems to have held that the term sought to be enforced—twelve years—was overbroad under California law *and* outside the terms of the agreement.

As an initial matter, we find that the plain terms of the Non-Competition Agreement do not

---

[4] This is demonstrated in part by the fact that the "Effective Date" of the Non-Competition Agreement was June 24, 1997, the same date Mori and TJT executed the Agreement and Plan of Merger.

[5] Mori also relies on the fact that the non-competition and employment agreements were expressly incorporated into the merger agreement, as well as the fact that the Non-Competition Agreement provides "this Agreement, the Merger Agreement and the Seller's Employment Agreement contain the entire understanding between the parties." Mori concludes from this that the employment term of four years also governs the Non-Competition Agreement.

limit its force and effect to a six-year term. First, the agreement specifically states that it shall last "[f]or the period beginning on the Effective Date and ending two (2) years following Seller's termination of employment with the Company *for any reason*." This language does not refer to any specific employment term, but rather broadly refers to the actual end of Mori's employment, whenever that may be. If the parties had wished to link the term of the Non-Competition Agreement to that in the Employment Agreement, they could have expressly done so. Further, the fact that the non-competition and employment agreements were incorporated into the merger agreement does not affect our conclusion. Nowhere in the Non-Competition Agreement does it expressly incorporate the Employment Agreement, demonstrating that it exists independently of the Employment Agreement and operates pursuant to its own plainly stated term. *See Vacco Indus. Inc v. Tony Van Den Berg*, 5 Cal. App. 4th 34, 6 Cal. Rptr. 2d 602 (1992) (holding that an employment agreement executed concurrently with a non-competition agreement in conjunction with a business sale operated independently and had no effect on the non-competition agreement); *accord Robb*, 33 Cal. App. 4th 1812, 39 Cal. Rptr. 2d 887 (1995).

Turning to California law, the plain language of section 16601 shows that the twelve-year term sought to be enforced is not unreasonable because TJT continued to operate in the same line of business as Leg-It formerly did. As stated above, section 16601 provides that the seller of a business "may agree with the buyer to refrain from carrying on a similar business … so long as the buyer … carries on a like business …." CAL. BUS. & PROF. CODE § 16601. California courts have long held that the plain language of the statute applies, and a non-competition agreement can potentially have an indefinite term so long as the buyer continues in the seller's line of business. *See Ragsdale v. Nagle*, 106 Cal. 332, 39 P. 628 (1895); *Gregory v. Spieker*, 110 Cal. 150, 42 P. 576 (1895); *Shafer v. Sloan*, 3 Cal. App. 335, 85 P. 162 (Ct. App. 1906); *Stephens v. Bean*, 65 Cal. App. 779, 224 P. 1022 (Ct. App. 1924); *Martinez v. Martinez*, 41 Cal. 2d 704, 263 P.2d 617 (1953). For example, in *Johnston v. Blanchard*, the seller of a business agreed not to compete for a term of thirty years from the date of the business sale. 16 Cal. App. 321, 324, 116 P. 973, 97 (Ct. App. 1911) (overruled on other grounds in *Graca v. Rodrigues*, 33 Cal. App. 296, 165 P. 1012 (Ct. App. 1917)). The court of appeals upheld the agreement, stating that the buyer was "entitled to have the contract enforced for his protection so long as he carries on a like business …." *Id.* at 328. Similarly, in *Akers v. Rappe*, the court of appeals upheld a covenant not to compete with a twenty-year term for the same reason. 30 Cal. App. 290, 158 P. 129 (1916).

Coupled with the *Robb* and *Alliant* cases, upholding agreements that set the selling party's employment as the benchmark for the non-competition term, the plain language of section 16601 and cases like *Johnston* and *Akers* demonstrate that the Non-Competition Agreement here was not overbroad in duration. It is undisputed that TJT continued to operate in the recycled tire and axle business at the time of the alleged breach; thus, the Non-Competition Agreement was enforceable at that time.

> **3.** **The district court erred in failing to consider whether and to what extent the Non-Competition Agreement could be "blue penciled" to bring its geographic scope within the bounds of California law.**

TJT also argues that the district court erred in determining that the Non-Competition Agreement was unenforceable because it was geographically overbroad, asserting that California law allows a court to narrow such covenants by "blue penciling" them to the extent necessary to make them enforceable. Mori responds that the agreement is indeed overbroad and, thus, void because it specifies the geographic scope in terms of where both TJT *and* Leg-It did business, rather than where Leg-It did business. Further, Mori argues that the agreement cannot be "blue penciled," citing a "modern trend" in California case law of declining to modify such agreements. Oddly, although the district court found that the non-compete was facially overbroad in geographic scope, it made no mention of the "blue pencil" issue in its decision, prompting this Court's (now-withdrawn) admonition in our initial opinion. *T.J.T., Inc.*, 2010 WL 1136820 (withdrawn).

First, we agree with the district court that the agreement here is facially overbroad in geographic scope because it prohibited competition in the areas in which both TJT *and* Leg-It did business. Section 16601 allows non-competition agreements to extend "within a specified geographic area in which the business *so sold* … has been carried on." CAL. BUS. & PROF. CODE § 16601 (emphasis added). Although California courts have formerly interpreted "the business so sold" broadly to include the buyer's company if that company engaged in the same field of business, more recently the courts have taken a more restricted approach. *Compare Monogram*, 64 Cal. App. 3d at 701, 134 Cal. Rptr. at 720 *with Strategix, Ltd. v. Infocrossing W., Inc.*, 142 Cal. App. 4th 1068, 1073, 488 Cal. Rptr. 3d 614, 616 (Ct. App. 2006). The current view limits non-competition agreements to the area where only the sold business has carried on business, as the plain language of section 16601 clearly mandates. *Strategix*, 142 Cal. App. at 1073, 48 Cal. Rptr. 3d at 617. "The geographic scope of a noncompetition covenant must be limited to the area where

the sold company carried on business because '[o]therwise, a seller could be barred from engaging in its business in places where it poses little threat of undercutting the company it sold to the buyer." *Alliant Ins. Serv.*, 159 Cal. App. 4th at 1301, 72 Cal. Rptr. 3d at 267 (quoting *Strategix*, 142 Cal. App. 4th at 1073, 48 Cal. Rptr. 3d at 617).

Although the agreement here was in contravention of that limitation, TJT presented an argument to the district court and on appeal as to how it could be "blue penciled" to bring its geographic scope within the bounds of section 16601.[6]  California courts have routinely narrowed such agreements in a similar way.  In dealing with an earlier version of the statute, which included the additional mandate that a non-compete would be "void only as to the extent to which it departs" from the statute, California courts either inferred a proper geographic scope from the parties' intent or from the established scope of the business.  For example, in *Franz v. Beiler*, the court refused to invalidate an agreement prohibiting competition within ten miles of a certain address.  58 P. 466 (Cal. 1899).  The statute in effect at the time required a specific city or county to be designated as the geographic limitation, and the limitation fell within multiple counties.  *Id.* Relying on that and the "void only as to the extent" language, the court limited the covenant to the county where most of the business took place and upheld it.  *Id.*  Similarly, in *Stephens v. Bean*, a covenant contained no geographic restriction at all, and the court looked to the parties' intent to limit the agreement to one county where the business was carried on.  224 P. 1022 (Cal. Ct. App. 1924); *see also Mahlstedt v. Fugit*, 180 P.2d 777 (Cal. Ct. App. 1947) (taking a similar approach).

Similar language was added to the modern version of section 16600, which provides that "[e]xcept as provided in this chapter, every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind *is to that extent void*," indicating that the former code provision lives on.  CAL. BUS. & PROF. CODE § 16600.  Accordingly, California courts have recognized their continuing ability to "blue pencil" an overbroad non-competition agreement, although they refuse to add terms to an agreement that the parties did not bargain for.  *See Strategix*, 142 Cal. App. 4th 1068, 488 Cal. Rptr. 3d 614.  For example, in *Strategix*, an agreement prohibited solicitation of the clients of only the *purchasing* business, which the court held was beyond the bounds of section 16601 because, as discussed above, such agreements may only

---

[6] TJT proposed removing the impermissible reference to itself—the buyer—and making the geographic scope of the agreement "within 1000 miles of any facility owned or operated by ~~the Company or~~ Leg-It." The record before the Court indicates that Leg-It had just one facility—the one located in Woodland, California.

9

prohibit competition in the geography of the *purchased* business. *Id.* Although the court cited with approval prior cases applying the "blue pencil" rule, it declined to apply the same rule to the agreement before it because it would have had to rewrite the agreement by *replacing* reference to the purchasing business with reference to the purchased business. The court expressed similar approval of "blue penciling" broad agreements that are otherwise valid in *Hill Medical Corp. v. Wycoff.* 86 Cal. App. 4th 895, 908, 103 Cal. Rptr. 2d 779 (Ct. App. 2001). In refusing to modify a non-competition agreement that the court found did not fall within one of the section 16601 exceptions, the court stated that "this is not a situation in which an otherwise valid covenant covers an unreasonably large geographical area or is unreasonably long in duration."[7] *Id.* Thus, both *Strategix* and *Hill Medical Corp.*, while refusing to modify the agreements before them, recognized the court's continuing ability to simply narrow the scope of an otherwise valid agreement.[8]

In the case at hand, the district court erred in finding that the agreement was void as a whole without any discussion of the "blue pencil" rule recognized by the cases discussed above and advocated by TJT. In addition to the support for this rule found in the statute and case law, the agreement contains a "Reformation" clause showing that application of the rule would comport with the parties' intent.[9] Notably, Mori is in breach of that clause, which states that he "will request such court to [] reform this Agreement to the extent necessary" to bring the geographical area within reason.

However, we decline to "blue pencil" the agreement on appeal because the parties have demonstrated a genuine issue of material fact as to the scope of Leg-It's business, and

---

[7] TJT correctly argues that its proposed "blue penciling" would constitute an appropriate narrowing of an otherwise valid agreement, rather than the rewriting disapproved of in cases like *Strategix* and *Hill Medical Corp.*

[8] Mori cites *Hill Medical Corp.* and *Koloni v. Gluska*, 64 Cal. App. 4th 402, 407–08, 75 Cal. Rptr. 2d 257, 260 (Ct. App. 1998), in support of his argument that non-competition agreements cannot be "blue penciled" under any circumstances. However, neither of those cases support that proposition because they both dealt with *per se* unenforceable non-competition agreements falling under section 16600 rather than section 16601.

[9] The clause states:

> If a court of competent jurisdiction determines that the limitations as to time, geographical area or scope of activity to be restrained contained herein are not reasonable and impose a greater restraint than is necessary to protect the goodwill or other business interests of the Company and its Leg-It Division, then the parties agree that such court should (and Seller will request such court to) reform this Agreement to the extent necessary to cause the limitations contained herein as to time, geographical area and scope of activity to be restrained to be reasonable and to impose a restraint that is not greater than necessary to protect the goodwill or other business interests of the Company and Leg-It and such court then shall enforce this Agreement as reformed.

consequently, the proper geographic scope of the covenant. The key factor in determining a covenant's proper geographic scope is the determination of what area is necessary to protect the goodwill of the sold business from competition by the seller. *See Alliant Ins. Services*, 159 Cal. App. 4th at 1301, 72 Cal. Rptr. 3d at 267. Although it is undisputed that Leg-It only had one facility, located in Northern California, the reach of its business beyond that location is hotly disputed. Leg-It's primary business was recycling tires and axles and then selling the recycled tires and axles to manufactured home factories in Northern California, but Mori also admitted to selling his product to a factory in Colorado. Leg-It also sold unrecycled tires and axles to other recyclers and factories, and Mori testified that Leg-It operated in some capacity in the eleven Western states. Mori argues that the extent of his business outside of Northern California was negligible, and TJT argues that it was a large part of the asset bargained for and purchased by TJT.

The true extent of Leg-It's business—a clear question of fact—must be determined in order to decide whether and to what extent the agreement may be "blue penciled." We, therefore, remand to the district court to make that factual finding and determine whether and how the agreement can be narrowed to within a scope that is reasonably necessary to protect the goodwill of Leg-It.

**C.     Neither party having prevailed on appeal, attorney fees are not appropriate at this time.**

The parties also dispute the district court's award of attorney fees to Mori. However, because further fact finding is necessary to determine whether and to what extent the Non-Competition Agreement is enforceable against Mori, neither party has prevailed and attorney fees are not appropriate at this time. Thus, the award of attorney fees is vacated.

**IV.**
**CONCLUSION**

The district court erred in (1) determining that the Non-Competition Agreement was impermissibly linked to Mori's employment and overbroad in duration, and (2) failing to consider whether the agreement's geographic scope could be "blue penciled" to bring it within California law. In addition, a genuine issue of material fact remains as to the true geographic scope of Leg-It's former business. Accordingly, the summary judgment and award of attorney fees is vacated,

11

and the case is remanded for proceedings consistent with this opinion. Costs on appeal are awarded to T.J.T.

Chief Justice BURDICK, and Justices EISMANN, W. JONES and HORTON CONCUR.