# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 48380

| | | |
|---|---|---|
| DAVID R. TAYLOR, an individual, and ROBERT R. TAYLOR, an individual, | ) ) ) | |
| Plaintiffs-Counterdefendants-Appellants, | ) ) ) | Pocatello, September 2021 Term |
| | ) ) | Opinion filed:  January 6, 2022 |
| v. | ) ) | Melanie Gagnepain, Clerk |
| TROY M. TAYLOR, an individual, | ) ) | |
| Defendant-Counterclaimant-Respondent. | ) ) ) | |

Appeal from the District Court of the Sixth Judicial District of the State of Idaho, Bannock County. Robert C. Naftz, District Judge.

The decision of the district court is <u>affirmed in part</u>, <u>reversed in part</u> and <u>remanded for further proceedings</u>.

Benoit, Alexander, Mollerup & Danielson, PLLC, Twin Falls, for Appellants. Bren E. Mollerup argued.

Racine Olson, PLLP, Pocatello, for Respondent. Brent O. Roche argued.

---

ZAHN, Justice.

This appeal concerns the enforceability and severability of a noncompetition provision of a contract. Robert, David, and Troy Taylor were partners in a commercial fire prevention business based in Alaska. Troy later formed his own business that directly competed with the partnership. In January 2015, Robert, David, and Troy signed an eight-paragraph agreement ("the Agreement") that settled all potential legal claims relating to Troy's competing business. The Agreement provided that Robert and David would buy Troy's interest in the partnership. In exchange, Troy agreed to pay Robert and David $30,000 each and not work in the fire prevention industry in Alaska and Nevada. In March 2018, Robert and David brought this action alleging, among other things, that Troy had breached the Agreement by working for a competing fire

1

prevention business in Nevada. Troy counterclaimed, asserting Robert and David had breached the Agreement. Robert and David voluntarily dismissed some claims and the district court dismissed the rest. In addition, the district court granted summary judgment in Troy's favor on his breach of contract counterclaim. Robert and David appeal, challenging the district court's rulings that: (1) the noncompete provision in the Agreement was unenforceable, (2) the Agreement was severable and enforceable without the noncompete provision, and (3) they could not assert an affirmative defense of excusable nonperformance based on their allegation that Troy materially breached the Agreement. We affirm in part and reverse in part.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Background

This matter concerns an agreement between Appellants, Robert and David Taylor, and Respondent, Troy Taylor, to settle a dispute over a family-owned business, Frontier State Fire ("Frontier State"). The family—Robert is the father of David and Troy—works in the fire prevention and suppression industry, operating several businesses, including Frontier State, which operated in Alaska,[1] and Silver State Fire ("Silver State"), which is owned and operated by David in Nevada. Robert founded Frontier State in 2010 as a partnership between himself and David. In 2011, Troy joined as a partner in Frontier State and relocated to Alaska to manage the business. Prior to working with Frontier State, Troy spent roughly six months working without pay at Silver State to learn the fire suppression business.

By 2014, management disputes arose between the parties, which culminated in Troy starting his own limited liability company ("LLC") that directly competed with Frontier State. Upon learning of Troy's LLC, Robert and David traveled to Alaska, confronted Troy, and ultimately negotiated the Agreement at the heart of this litigation. The Agreement, drafted without the assistance of legal counsel, states:

1. Purchase of Troy's 1/3 ownership in Frontier State Fire in the Amount of $288,000.00 to be paid with the following terms:

   A – $30,000 will be paid to each of the remaining partners (Robert & David)

   B – The balance will be paid to Troy in the amount of $3,000.00/month for 96 Months beginning February 1st, 2015.

   C – The Ditch Witch SK500 Mini Skidsteer will be included with this deal at no additional charge.

---

[1] As of March 2018, Frontier State is no longer in business.

2. Troy agrees to not perform any work in Nevada or Alaska in any form in Fire Protection or Detection/Actuation.

3. Troy agrees not to bring about or promote anything that would be detrimental to Frontier State Fire or the wellbeing of its owners or employees.

4. David and Robert agrees [sic] that they will not bring any civil or criminal charges against Troy nor his wife in any matters of the partnership as long as the terms of this agreement are adhered to.

5. If this agreement is breeched [sic], this agreements [sic] will become null and void with no monies being owed to either party.

6. This note will be unsecured or how [illegible]

7. Vehicles will be refinanced within 60 days.

8. Employment will be offered and Troy agrees to continue to work as a regular employee of the company through the end of April 2015 or longer or shorter if both parties agree.

Key to this matter are paragraph 2 ("the noncompete clause") and paragraph 5 ("the forfeiture clause").[2] The parties signed the Agreement on January 20, 2015. Soon after, Troy paid $30,000 apiece to Robert and David. On February 1, 2015, Robert and David began making $3,000 monthly payments to Troy. The payments continued until October 2017, when Robert decided, and David agreed, to stop making payments to Troy.

Around the same time that Robert and David stopped making the $3,000 monthly payments to Troy, Troy accepted a job with State Fire Sales and Service ("State Fire") in its Salt Lake City, Utah, office. State Fire performs fire suppression work, similar to Silver State or Frontier State, in Utah, Idaho, Oregon, Wyoming, Arizona, and Nevada.[3] While Troy did not initially perform work for State Fire in Nevada, he testified that between November 13, 2017, and November 22, 2017, he worked for five days in Nevada. Troy also stated that by the end of November 2017, he was working for State Fire in Elko, Nevada, performing construction work (as opposed to fire prevention work) on a building the company had recently purchased. Then, beginning February 1, 2018, Troy started a position with State Fire as the manager of its fire extinguisher and kitchen suppression department in Elko.

---

[2] During the proceedings below the parties disputed the meaning of paragraph five of the Agreement, which the district court ultimately ruled was a forfeiture clause. Neither party disputes this conclusion on appeal.

[3] Jeff Taylor, David and Troy's eldest brother, is the president of State Fire's operations in Nevada, western Idaho, and Arizona.

3

The next day, Troy sent a demand letter to Robert and David, seeking reimbursement for the five missed monthly payments. Robert and David, in turn, filed a four-count complaint against Troy in Bannock County district court on March 15, 2018.

## B. Procedural History

Robert and David's complaint asserted four counts against Troy: (1) fraud in the inducement; (2) constructive and/or actual fraud; (3) breach of contract; and (4) breach of fiduciary duty. Relevant to these proceedings, Robert and David's breach of contract claims alleged that Troy had breached the Agreement's noncompete clause. Troy answered and filed a counterclaim, alleging that Robert and David breached the contract when they stopped making monthly payments to Troy. Robert and David answered Troy's counterclaim, asserting an affirmative defense of excusable nonperformance based on Troy's alleged breach of the noncompete provision.

On March 27, 2019, Troy moved for summary judgment, requesting that the district court dismiss Robert and David's claims against him and grant judgment in his favor on his counterclaim. Robert and David moved for a continuance under Idaho Rule of Civil Procedure 56(d), and the district court granted their motion in an oral ruling on April 29, 2019. Following additional discovery, Robert and David voluntarily dismissed both of their fraud claims against Troy, leaving only their breach of contract and breach of fiduciary duty claims.

The district court heard oral argument on Troy's motion for summary judgment on September 9, 2019. The district court later issued a memorandum decision and order, granting the motion in part and denying it in part. The district court determined that Robert and David had failed to submit evidence to dispute Troy's claim that he had not breached any fiduciary duty owed to them and granted summary judgment against them on this claim. However, the district court concluded that there was a genuine issue of material fact as to whether Troy had worked in Nevada in violation of the noncompete clause prior to Robert and David stopping their monthly payments to Troy. Accordingly, the district court denied summary judgment on Robert and David's breach of contract claim. As to Troy's counterclaim, the district court found a genuine issue of material fact existed regarding which party had breached the Agreement first and denied Troy's motion for summary judgment.

In preparation for trial, each party submitted a pretrial statement. In Troy's pre-trial statement, he requested that the district court issue a written ruling regarding the enforceability

4

of the portion of the noncompete clause relating to Nevada and the enforceability of the forfeiture clause. In their pretrial statement, Robert and David explained that they were abandoning their breach of contract claim in order to focus exclusively on defending against Troy's breach of contract counterclaim. Additionally, in their objection to Troy's pretrial statement, Robert and David agreed that the enforceability of the forfeiture clause in the Agreement should be determined before trial. However, they argued that the district court had already determined the noncompete clause was enforceable when it denied summary judgment on the competing breach of contract claims. The district court subsequently vacated the scheduled trial and took the parties' pretrial issues under advisement.

On January 21, 2020, the district court issued a memorandum decision and order on the parties' pretrial issues. With respect to the noncompete clause, the district court framed the issue before it as whether "the Nevada prong of the noncompete provision [is] enforceable." However, the district court ruled that the entirety of the Agreement's noncompete clause was unenforceable as a matter of law. The district court noted that different standards applied to a court's evaluation of a noncompete clause depending on whether the clause is part of an employment agreement or an agreement incident to the sale of a business. It applied the more relaxed standard for a noncompete clause incident to the sale of a business and concluded the Agreement's noncompete clause was unreasonable because: (1) it did not have a temporal limit, and (2) its territorial scope was overly broad as the parties' dispute only concerned Frontier State in Alaska, not Silver State in Nevada.

The parties then filed cross-motions for reconsideration. Robert and David requested the Court to reconsider its ruling on the enforceability of the noncompete clause, arguing that the district court had applied the wrong standard in considering the enforceability of that provision. Troy's motion for reconsideration asked the district court to reconsider its previous denial of summary judgment on his breach of contract counterclaim given its rulings on the other pretrial issues.

The district court heard oral argument on the cross-motions on March 2, 2020. At the conclusion of that hearing, the district court indicated that it would only consider and issue a written decision with respect to Robert and David's motion for reconsideration, concluding that Troy needed to file another motion for summary judgment before the district court could rule on his counterclaim. The district court subsequently issued a written decision denying Robert and

5

David's motion for reconsideration. The district court reasoned that it had applied the correct standard in determining the enforceability of the noncompete provision and that, even under the standard applicable to an employment agreement, the noncompete was unreasonable because it lacked a temporal limit and its territorial extent was overly broad.

Troy then filed a second motion for summary judgment, contending he was entitled to judgment as a matter of law on his breach of contract counterclaim. Troy argued that the district court's prior rulings—dismissing each of Robert and David's claims, concluding the Nevada provision of the noncompete was unenforceable, and determining that a valid contract existed between the parties—meant the sole remaining issues before the district court were the extent of his damages and whether Robert and David had any viable defenses. With respect to his damages, Troy argued that he proved them with reasonable certainty, and submitted the affidavit of an economist calculating his damages by totaling the remaining monthly payments under the contract plus interest. Troy also argued that Robert and David's defense of excusable nonperformance was not viable because it was based on an allegation that Troy had breached the unenforceable noncompete clause.

Robert and David opposed Troy's motion for summary judgment and filed their own cross-motion for summary judgment. They argued that Troy's counterclaim should be dismissed as matter of law because the noncompete clause could not be severed from the remaining contract provisions as it was an essential element of the contract. Without the noncompete clause, they argued, the rest of the contract was unenforceable. In the alternative, Robert and David claimed that genuine issues of material fact remained for the jury, including whether they were excused from performing under the contract by Troy's breach of the noncompete clause; whether there was a "meeting of the minds" concerning the contract; and whether the doctrine of anticipatory breach barred Troy's damages claim. Robert and David did not submit an affidavit opposing Troy's claimed damages.

The district court heard oral argument on the second cross-motions for summary judgment, and later issued a written order granting Troy's motion and denying Robert and David's. The district court concluded that the Nevada portion of the noncompete clause was severable from the Agreement, reasoning that Frontier State did not conduct business in Nevada and that Robert and David had not presented evidence that Frontier State lost any customers based on Troy's conduct in working in Nevada. In short, the district court determined that "the

6

subject matter of [the Agreement] was unrelated to any business the family had in Nevada . . . [and] [t]hus, the Nevada prong of the noncompete provision was not an essential part of [the Agreement] and could be eliminated without affecting the rest of the contract." Turning to Troy's counterclaim, the district court concluded that Troy had successfully carried his burden by proving (1) the existence of a valid agreement, (2) that Robert and David breached the agreement by refusing to make monthly payments after October 2017, and (3) that the breach caused Troy substantial and reasonably certain economic damages.

Robert and David made another motion for reconsideration, which the district court denied in an oral ruling. The district court subsequently entered a final judgment, awarding Troy $288,352.78 in damages, attorney fees, and costs.

Robert and David timely appealed.

## II.    ISSUES ON APPEAL

1. Did the district court err in concluding that the noncompete clause was unenforceable?

2. Did the district court err in concluding that the Agreement was severable and could be enforced without the noncompete clause?

3. Did the district court err in concluding that Robert and David could not assert an affirmative defense of excusable nonperformance based on Troy's alleged breach of the noncompete clause?

4. Is Troy entitled to attorney fees on appeal under Idaho Code section 12-120(3)?

## III.    STANDARD OF REVIEW

On appeal of either a summary judgment order, or an order reconsidering summary judgment, this Court applies the same standard utilized by the district court in considering the motion. *Gregory v. Stallings*, 167 Idaho 123, 128, 468 P.3d 253, 258 (2020) (motion for summary judgment); *Massey v. Conagra Foods, Inc.*, 156 Idaho 476, 479, 328 P.3d 456, 459 (2014) (motion to reconsider a motion for summary judgment). "On review, summary judgment is appropriate if 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Progressive Nw. Ins. Co. v. Lautenschlager*, 168 Idaho 841, __, 488 P.3d 509, 512 (2021) (quoting I.R.C.P. 56(a)). The moving party carries the burden to demonstrate the absence of a genuine issue of material fact. *Farm Bureau Ins. Co. of Idaho v. Kinsey*, 149 Idaho 415, 419, 234 P.3d 739, 742 (2010) (citation omitted). This Court "construe[s] the record in favor of the nonmoving party, drawing all reasonable inferences in that party's

favor." *Id.* If reasonable minds could differ as to the conclusions to be drawn from the record, summary judgment must be denied. *Id.*

## IV.   ANALYSIS

### A. The district court did not err in concluding that the noncompete clause was unenforceable.

Robert and David argue that the district court applied the wrong standard in concluding that the noncompete clause was unenforceable. Specifically, they argue that the Agreement is neither an employment contract nor a contract for the sale of a business; rather, they assert it is a settlement agreement and should be interpreted more leniently. In addition, they claim that the noncompete clause is not, in fact, a noncompete clause, but rather a forfeiture clause. Troy, in contrast, asserts that the district court correctly determined that the noncompete was unenforceable. He also asserts that Robert and David have not preserved their argument that the noncompete provision is actually a forfeiture provision.

    1. <u>Robert and David have not preserved their argument that paragraph two of the Agreement is a forfeiture provision.</u>

On appeal, Robert and David argue that because the Agreement is a settlement agreement that includes a forfeiture clause in paragraph five, that the noncompete language in paragraph 2 is actually a forfeiture clause, which should be interpreted and enforced according to the standard articulated in *Trumble v. Farm Bureau Mutual Insurance Company of Idaho*, 166 Idaho 132, 456 P.3d 201 (2019). In *Trumble*, an insurance agent, who was an independent contractor, sought to collect a "service bonus commission" after his contract was terminated. 166 Idaho at 138, 456 P.3d at 207. Trumble had two contracts with Farm Bureau Insurance that were at issue in the case. *Id.* at 137–38, 456 P.3d at 206–07. One was a "Career Agent's Contract," which included a noncompete provision. The noncompete provided that upon termination of the contract, Trumble "shall not compete" with Farm Bureau for a period of 90 days within a radius of fifty miles of his residence. *Id.* The other contract was a "Career Agent's Service Bonus Commission Memorandum of Understanding," which set forth the conditions for Trumble to receive a "commission credit." *Id.* The bonus commission agreement provided that the commission credit would not become payable until the agent complied with other plan requirements, terminated his employment, and fulfilled the no competition requirement. *Id.* With regard to the no competition requirement, the bonus commission agreement provided that Farm Bureau would pay Trumble the commission credit if he did not compete with Farm Bureau for one year after termination. *Id.*

8

After terminating Trumble's contract, Farm Bureau refused to pay Trumble the commission credit because Trumble worked for a competing insurance agency within the one-year period. *Id.* Trumble argued that the bonus commission agreement's noncompete language was unreasonable because he accumulated the commission credit, which totaled more than $250,000, over more than 20 years. *Id.* at 142, 456 P.3d at 211. Trumble urged this Court to hold that such forfeiture clauses tied to restrictive covenants were unenforceable because they were unreasonable. *Id.*

This Court determined that Trumble's reasonableness argument failed for two reasons. First, Trumble was an independent contractor, not an employee; thus, the reasonableness test for noncompete provisions in employment contracts was inapplicable. *Id.* at 143, 456 P.3d at 212. Second, the Court determined the district court correctly applied the Court of Appeals' decision in *Anderson v. Farm Bureau Mutual Insurance Company*, 112 Idaho 461, 732 P.2d 699 (Ct. App. 1987).

*Anderson* concerned, in part, the enforceability of a noncompete provision in an insurance agent's bonus commission agreement. *Anderson*, 112 Idaho at 469–70, 732 P.2d at 707–08. While the Court of Appeals noted that a noncompete agreement in an insurance agent's contract would be upheld if it is ancillary to employment and reasonable in its application, the court reasoned that a noncompete clause which resulted in the forfeiture of an agent's bonus commission was not a restrictive covenant in that sense. *Id.* at 470, 732 P.2d at 708. Rather, it simply imposed a contractual forfeiture of the commission payment and was, therefore, a forfeiture provision. *Id.* As such, the Court of Appeals held that the forfeiture provision was enforceable because it was not subject to the same reasonableness analysis as a noncompete provision applicable to an employee. *Id.* at 471, 732 P.2d at 709.

Trumble's bonus commission agreement was nearly identical to one of the contracts at issue in *Anderson*. *Trumble*, 166 Idaho at 143, 456 P.3d at 212. This Court adopted the Court of Appeals' reasoning in *Anderson* and concluded the noncompetition clause in Trumble's bonus commission agreement was a forfeiture provision. As such, it was not subject to the same reasonableness analysis applicable to a noncompete provision. *Id.*

Troy contends that Robert and David have not preserved this issue for appeal as they did not cite to *Trumble* below, nor did they argue that paragraph two was a forfeiture provision. Robert and David assert that they were not required to cite to *Trumble* to preserve their

9

argument, and that they argued repeatedly before the district court that the noncompete in the Agreement should be subject to a different standard because it was part of a settlement agreement rather than an employment agreement or agreement related to the sale of a business.

"[S]ubstantive issues may not be raised for the first time on appeal because allowing new issues on appeal would change the function of the appellate courts[.]" *State v. Gonzales*, 165 Idaho 95, 98, 439 P.3d 1267, 1270 (2019) (citing *Garcia-Rodriguez*, 162 Idaho 271, 276, 396 P.3d 700, 705 (2017)). That being said, "[a] party may refine issues that they have raised below with additional legal arguments so long as the substantive issue and the party's position on that issue remain the same." *Siercke v. Siercke*, 167 Idaho 709, 715–16, 476 P.3d 376, 382–83 (2020) (citing *Ada Cnty. Highway Dist. v. Brooke View, Inc.*, 162 Idaho 138, 142 n.2, 395 P.3d 357, 361 n.2 (2017)). Accordingly, this Court may consider "refined legal arguments regarding an issue heard and decided by the court below, but in fairness to the district court and the opposing party, [it] cannot usurp the district court's role by deciding new legal issues in the first instance." *Id.* (citing *Gonzales*, 165 Idaho at 98–99, 439 P.3d at 1270–71).

We hold that Robert and David have not preserved their argument that paragraph two is actually a forfeiture provision. Whether the noncompete provision in the Agreement is actually a forfeiture provision is a new substantive question, not raised before the district court below. The district court ruled that paragraph five of the Agreement was a forfeiture provision intended to relieve Robert and David of their obligations under the Agreement should Troy breach its terms. At no point below did Robert and David argue that this ruling affected the noncompete clause's enforceability, or the standard applicable to that determination. Instead, they argued on numerous occasions that the Agreement was a settlement agreement, subject to a more lenient reasonableness standard than the district court applied because of "Idaho's public policy favoring amicable settlements reached between parties." They never argued, however, that paragraph two was actually a forfeiture provision and, therefore, the reasonableness standard applicable to noncompete provisions should not apply *at all*. Now, on appeal, they argue for the first time that paragraph two is enforceable as a forfeiture clause because "this was a settlement agreement containing a forfeiture clause, [so] the [district] court's reasonableness analysis was improper." In short, Robert and David's argument regarding *Trumble* does not merely refine their position on appeal, it posits a completely new interpretation of paragraph two that neither Troy nor the

10

district court had an opportunity to address. As such, we will not consider this new argument on appeal.

2. The district court did not err in ruling that the noncompete clause was unenforceable.

The district court ruled that the noncompete clause was unenforceable because it lacked any temporal limit and its territorial extent was overly broad. Robert and David argue that the district court applied the wrong standard in passing on the noncompete's enforceability because the Agreement was a settlement agreement as opposed to a contract for the sale of a business or employment agreement. In other words, Robert and David's argument rests on the premise that the purpose of the agreement determines the standard which will be applied to assess the validity of a noncompete clause. This argument misinterprets our case law concerning noncompete provisions.

In *Shakey's Inc. v. Martin*, 91 Idaho 758, 762, 430 P.2d 504, 508 (1967), this Court recognized the common law rule that "agreements in restraint of a man's right to exercise his trade or calling were against public policy and hence unlawful[.]" *Id.* at 762, 430 P.2d at 508 (citing 36 Am. Jur. Monopolies, Combination, etc. § 50). However, we also noted that this general prohibition needed to be balanced against another fundamental tenant of law, "that the contracts of persons . . . are to be enforced." *Id.* (citing 5 Williston, Contracts § 1629 (Rev. Ed. 1937)). Thus, we have recognized that noncompete provisions are generally disfavored because they are against public policy, but they may be permissible under certain circumstances. Regardless of the purpose underlying the agreement at issue, we have steadfastly held that to be enforceable a noncompete provision must be "reasonable as applied to the covenantor, the covenantee, and the general public." *Jorgensen v. Coppedge*, 145 Idaho 524, 528, 181 P.3d 450, 454 (2008) (quoting *Bybee v. Isaac*, 145 Idaho 251, 257, 178 P.3d 616, 622 (2008)); *see also Freiburger v. J-U-B Eng'rs, Inc.*, 141 Idaho 415, 420, 111 P.3d 100, 105 (2005) (citations omitted).

The reasonableness of a noncompete provision, in turn, hinges on whether the provision extends only as far as is reasonably necessary to protect the legitimate business interest of the covenantee. *Bybee v. Isaac*, 145 Idaho 251, 257, 178 P.3d 616, 622 (2008). The reasonableness of a noncompete provision is generally assessed by examining three essential terms: (1) time; (2) territory; and (3) scope of restricted activities. *See Ins. Ctr., Inc. v. Taylor*, 94 Idaho 896, 900, 499 P.2d 1252, 1256 (1972); *Bybee*, 145 Idaho at 257, 178 P.3d at 622. Thus, while the nature of

11

the underlying agreement is not among the standards we apply, it may factor into the reasonableness analysis by helping to define the scope of the legitimate business interest being protected and how far the restrictions may extend to protect that interest.

While the question of reasonableness is generally one for the finder of fact, a court may rule a noncompete agreement unreasonable as a matter of law if it is lacking any limitation with respect to the three essential elements of time, territory, and scope of restricted activity. *See Ins. Ctr., Inc.*, 94 Idaho at 900, 499 P.2d at 1256 ("[T]he covenant in question . . . was so lacking in the essential terms . . . namely a limitation on time, area, and scope of activity, that the covenant is as a matter of law unenforceable.")

Applying these standards in this case, we conclude the noncompete provision is unenforceable because the provision contains no limitation on its duration, meaning it prohibits Troy from working in the fire protection business in Alaska or Nevada for the rest of his life. Robert and David argue the provision is not actually a noncompete clause but instead is part of a "settlement agreement" that should be enforced regardless of its terms. We reject their argument because it elevates form over substance. Regardless of its title, the Agreement contains provisions related to the sale of Troy's partnership interest, settlement of legal disputes, and Troy's continued employment at Frontier State. The noncompete provision is ancillary to those purposes. As such, the noncompete is assessed under the standard of reasonableness, which requires that the noncompete to be "reasonable as applied to the covenantor, the covenantee, and the general public." *See, e.g.*, *Jorgensen*, 145 Idaho at 528, 181 P.3d at 454. Regardless of what the Agreement is called, the protectable business interest analysis is the same. In this case the noncompete contains no temporal limitation and is, therefore, unreasonable as a matter of law because it prohibits Troy's exercise of a trade in excess of any legitimate business interest Robert and David sought to protect.

We agree with Robert and David that the district court was imprecise with its language and, at different times, indicated that it invalidated the Nevada portion of the noncompete as well as the entirety of the noncompete. However, the fact that the Agreement lacked any temporal limitation necessarily renders the entire noncompete provision unenforceable. As a result, we affirm the district court's ruling invalidating the entirety of the noncompete. Because we have concluded the noncompete is unenforceable due to the lack of temporal limitation, we need not address whether the territorial restriction was overly broad.

12

**B. The district court erred in ruling that the noncompete clause was severable from the Agreement as a matter of law.**

Robert and David argue that the district court erred in granting summary judgment in favor of Troy on his breach of contract counterclaim because the district court should have submitted to the jury the issue of whether the Agreement could be enforced without the noncompete clause. Robert and David contend that they would not have entered into the Agreement without the noncompete provision. They argue the district court erred when it enforced the remainder of the Agreement because the noncompete was an essential term and they would not have entered into the Agreement without it.[4] Troy counters by arguing that Idaho law indicates that rather than determining an entire contract is unenforceable due to an unenforceable noncompete provision, courts should apply a flexible, case-by-case approach to enforce the remainder of the agreement.

The question of the severability of a contract is one that requires discerning the parties' intent. *Magic Valley Radiology Assocs., P.A. v. Prof'l Bus. Servs., Inc.*, 119 Idaho 558, 567, 808 P.2d 1303, 1312 (1991). This Court has adopted the following test to determine a contract's severability:

> The essential test to determine whether a number of promises constitute one contract or more than one is simple. It can be nothing else than the answer to an inquiry whether the parties assented to all the promises as a single whole, so that there would have been no bargain whatever, if any promise or set of promises were struck out.

*Id.* (quoting *Lewis v. Fletcher*, 101 Idaho 530, 617 P.2d 834 (1980)). The intention to have the contract be severable must be apparent, otherwise "the court imposes upon the parties a contract to which they have not assented, and which in all likelihood [] would not have voluntarily made." *Coppedge v. Leiser*, 71 Idaho 248, 252, 229 P.2d 977, 979 (1951). Whether the parties intended an agreement to be nonseverable "is essentially a question of fact to be determined by the trier of fact." *Magic Valley Radiology*, 119 Idaho at 567, 808 P.2d at 1312.

---

[4] Robert and David also argue that the district court improperly "blue penciled" the Agreement by removing the noncompete and enforcing the remainder of the Agreement. However, as discussed below, blue penciling involves the equitable power of a court to enforce reasonable portions of a noncompete provision rather than striking the entire clause. *See Pinnacle Performance, Inc.*, 135 Idaho at 369, 17 P.3d at 313. Here, the district court did not "blue pencil" the noncompete provision, but instead concluded that it was unenforceable. Robert and David alternatively argue that the Agreement was improperly reformed; however, the district court did not purport to reform the Agreement and reformation is a remedy only available in instances of mutual mistake. *See, e.g.*, Restatement (Second) of Contracts § 155 (1981) ("Where a writing . . . fails to express the agreement because of a mistake of both parties as to the contents . . . of the writing, the court may at the request of a party reform the writing . . . .").

Troy cites to *Insurance Center, Inc. v. Taylor*, 94 Idaho 896, 499 P.2d 1252 (1972) for the premise that Idaho has abandoned the concept of severability as applied to noncompete provisions. *Insurance Center* concerned a request for injunctive relief to prevent two former insurance agents from soliciting customers in violation of a noncompete clause in their agent contracts. *Ins. Ctr., Inc.*, 94 Idaho at 897, 499 P.2d at 1253. The district court concluded that the noncompete clause was unlimited as to time or territory, but nonetheless incorporated territorial and temporal limits into the noncompete so that it was reasonable and enforceable. *Id.* at 898, 499 P.2d at 1254. On appeal, this Court considered whether the district court's decision to incorporate reasonable limits in a noncompete clause was appropriate. *Id.* Despite this Court's acceptance of "the principle that a trial court may in a proper case modify a restrictive covenant," it held the noncompete at issue in *Insurance Center* was unenforceable as a matter of law because it lacked the essential terms of "time, area, and scope of activity." *Id.* at 900, 499 P.2d at 1256.

Contrary to Troy's assertion, *Insurance Center* does not concern severability but rather a trial court's ability to modify the provisions of a noncompete so that it may remain enforceable. It does not stand for the premise Troy suggests, but instead indicates the district court could not salvage the unenforceable noncompete provision. It says nothing about the district court's ability to enforce the rest of the contract without the provision.

Troy also contends that numerous Idaho cases discussing the enforceability of noncompete provisions do not apply a severability analysis. However, those cases are similarly inapplicable because they did not address the question before this Court—whether the invalidation of a noncompete clause renders the remainder of the contract unenforceable. *See T.J.T., Inc. v. Mori*, 152 Idaho 1, 266 P.3d 476 (2011) (discussing the enforceability of a noncompete clause under California law); *Intermountain Eye & Laser Ctrs., P.L.L.C. v. Miller*, 142 Idaho 218, 127 P.3d 121 (2005) (discussing the enforceability of a noncompete and whether a district court should have employed the "blue pencil" doctrine, but not considering whether the underlying agreement was severable); *Freiburger v. J-U-B Eng'rs, Inc.*, 141 Idaho 415, 111 P.3d 100 (2005) (discussing whether an employer had a legitimate business interest to protect and whether a noncompete clause served that interest, but not whether the agreement was severable); *Pinnacle Performance*, 135 Idaho at 367–70, 17 P.3d at 311–14 (discussing the enforceability of a noncompete clause, but not its severability from the underlying contract).

14

In this case, the district court concluded that "the Nevada prong of the noncompete provision was not an essential part of the . . . Agreement and could be eliminated without affecting the rest of the contract." It reasoned that the subject matter of the Agreement "was focused on [Troy] selling his interest in Frontier State," and that Frontier State did not conduct business in Nevada. In reaching its conclusion, the district court noted that "it is not unprecedented for courts to restrict overly broad noncompete provisions without invalidating the entire contract," and cited four cases from other jurisdictions for this proposition. Yet, like Troy's argument above, the cases cited by the district court do not concern whether a contract may be enforced without an unenforceable noncompete provision, but rather whether trial courts may apply the blue-pencil doctrine to salvage an otherwise unenforceable noncompete provision. *See Beverage Sys. of the Carolinas, LLC v. Assoc. Beverage Repair, LLC*, 784 S.E.2d 457 (N.C. 2016) (discussing whether the court may apply the blue pencil doctrine to save an otherwise unenforceable noncompete clause); *Armendariz v. Found. Health Psychcare Servs., Inc.*, 6 P.3d 669 (Cal. 2000) (considering the limitations on a court's ability to "sever[] or restrict[] illegal terms rather than voiding the entire contract," and acknowledging that "courts must have the capacity to cure the unlawful contract through severance or restriction of the offending clause, which . . . is not invariably the case"); *Clark's Sales & Serv., Inc. v. Smith*, 4 N.E.3d 772 (Ind. 2014) (discussing Indiana's blue pencil doctrine, which allows a court to strike unreasonable restrictions in a noncompete clause and enforce reasonable ones, provided they are severable); *Unlimited Opportunity, Inc. v. Waadah*, 861 N.W.2d 437 (2015 (Neb. 2015) (declining to apply the blue pencil rule and stating that a noncompete provision must either be enforced "as written or not . . . at all"). In this case, the district court did not salvage the noncompete clause, but instead struck it entirely because it was unenforceable. The cases cited by the district court do not stand for the premise that the remainder of the Agreement could be enforced without the noncompete provision.

We hold the district court erred in granting summary judgment on Troy's breach of contract counterclaim as there is a genuine issue of material fact concerning the severability of the Agreement. The district court did not conduct an analysis of the parties' intentions, but instead discussed its belief that the Nevada provision of the noncompete clause could be severed without disturbing what it saw as the Agreement's primary purpose. Construing disputed facts in Robert and David's favor, and drawing reasonable inferences from those facts, we hold there is a

15

genuine dispute of material fact as to the parties' intent regarding the Agreement's severability. As such, we reverse the district court's decision granting summary judgment in favor of Troy on his breach of contract counterclaim.

## C. The district court did not err in concluding that Robert and David could not prove an affirmative defense of excusable nonperformance.

Robert and David argue that the district court erred in concluding that they could not prove their affirmative defense that their performance was excused by Troy's material breach of the noncompete clause. Troy contends that the district court did not err because a party cannot breach an unenforceable contract provision.

"The burden of proving the existence of a contract and fact of its breach is upon the plaintiff, and once those facts are established, the defendant has [the] burden of pleading and proving affirmative defenses, which legally excuse performance." *Idaho Power Co. v. Cogeneration, Inc.*, 134 Idaho 738, 747, 9 P.3d 1204, 1213 (2000) (citing *O'Dell v. Basabe*, 119 Idaho 796, 813, 810 P.2d 1082, 1099 (1991)). One such defense is that "a party sued for damages may defend on the grounds that its performance was excused by the other party's material breach." *Melaleuca, Inc. v. Foeller*, 155 Idaho 920, 924, 318 P.3d 910, 914 (2014). However, a void and unenforceable contract provision cannot be breached. *See Taylor v. Taylor*, 163 Idaho 910, 920–21, 422 P.3d 1116, 1126–27 (2018).

Robert and David argue that their performance under the Agreement was excused by Troy's breach of the contract when he performed fire prevention work in Nevada. They contend that their performance was excused before the district court ruled that the noncompete was unenforceable; thus, they were justified in ceasing to perform under the Agreement. In other words, Robert and David suggest a Schrödinger's contract term, both capable of being materially breached, yet unenforceable as a matter of law. We reject that interpretation and affirm the district court's decision concluding that they could not carry their burden to prove their performance under the Agreement was excused because a party cannot breach an unenforceable contract provision.

## D. Attorney Fees

Troy has requested attorney fees on appeal pursuant to Idaho Code section 12-120(3). Robert and David do not request attorney fees on appeal but ask this Court to reverse the district court's award of attorney fees to Troy below.

16

Idaho Code section 12-120(3) provides that "in any civil action to recover on a[] . . . commercial transaction . . . the prevailing party shall be allowed . . . reasonable attorney[] fee[s]" I.C. § 12-120(3). To recover under section 12-120(3), the gravamen of a claim must be a commercial transaction. *Stevens v. Eyer*, 161 Idaho 407, 410, 387 P.3d 75, 78 (2016). We do not reach the question of whether this matter concerns a commercial transaction because both parties have prevailed in part on appeal. Where both parties prevail in part on appeal, this Court may decline to award attorney fees. *See City of Middleton v. Coleman Homes, LLC*, 163 Idaho 716, 732, 418 P.3d 1225, 1241 (2018) (citation omitted). In this case, Troy prevailed as to the unenforceability of the noncompete and whether Robert and David could assert an affirmative defense of excuse based on his alleged breach of that provision. However, Robert and David prevailed with respect to the severability of the Agreement and as a result obtained the reversal of the district court's grant of summary judgment in favor of Troy on his counterclaim. As such, we decline to award attorney fees on appeal because both parties have prevailed in part. Further, since we remand this matter for further proceedings, the district court's award of attorney fees to Troy is vacated.

## V.    CONCLUSION

Based on the forgoing, we affirm in part and reverse in part the district court's orders and judgments and remand for further proceedings. First, we conclude that the district court did not err in ruling that the noncompete clause was unenforceable as a matter of law because it lacked any temporal limitation. Second, we conclude the district court erred in granting summary judgment in favor of Troy on his breach of contract counterclaim because there is a genuine issue of material fact as to whether the Agreement was severable. Third, we conclude that Robert and David failed to establish that their performance under the Agreement was excused based on Troy's alleged breach of the unenforceable noncompete clause. Finally, we vacate the district court's award of attorney fees to Troy and decline to award either party attorney fees or costs on appeal.

Justices BRODY, STEGNER, and MOELLER and Justice Pro Tem CARNAROLI CONCUR.

17