# IN THE SUPREME COURT OF THE STATE OF IDAHO
## Docket No. 48785

| | | |
|---|---|---|
| DONALD BLASKIEWICZ, M.D.,<br>an individual, | ) | |
| | ) | |
| | ) | |
| Plaintiff-Respondent, | ) | Boise, June 2022 Term |
| | ) | |
| v. | ) | Opinion Filed: October 31, 2022 |
| | ) | |
| SPINE INSTITUTE OF IDAHO, P.A., an | ) | Melanie Gagnepain, Clerk |
| Idaho professional services corporation, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Deborah A. Bail, District Judge.

The judgment of the district court is <u>vacated,</u> and the case is <u>remanded</u>.

Eberle, Berlin, Kading, Turnbow & McKlveen, Chartered, Boise, for appellant, Spine Institute of Idaho, P.A. Eric S. Taylor argued.

Givens Pursley, LLP, Boise, for respondent, Donald Blaskiewicz. Bradley J. Dixon argued.

_____

STEGNER, Justice.

Donald Blaskiewicz, M.D., is a highly-trained neurosurgeon. In 2018, he became employed by the Spine Institute of Idaho (the "Spine Institute" or the "Institute"). The Spine Institute entered into a Professional Services Agreement (the PSA) with Blaskiewicz, which contained a non-compete clause. The PSA contractually proscribed Blaskiewicz from practicing medicine within fifty miles of the Spine Institute's office (with an explicit exception for Caldwell) for a period of eighteen months, should his employment with the Spine Institute be terminated for any reason. Pursuant to the PSA, Blaskiewicz had two ways to avoid the non-compete clause: he could either get permission from the Spine Institute to practice medicine within the proscribed area, or he could pay the Spine Institute $350,000 in "liquidated damages." The PSA also required any disputes to be resolved by arbitration.

1

Less than a year and a half after hiring Blaskiewicz, the Spine Institute terminated his employment. Blaskiewicz filed suit in district court, seeking a declaratory judgment that the non-compete clause was unenforceable. The district court concluded that the non-compete clause was against public policy and void as a matter of law. The district court granted summary judgment in favor of Blaskiewicz. For the reasons discussed below, we vacate the district court's grant of summary judgment.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

The Spine Institute provides medical care for patients in the Treasure Valley suffering primarily from spine issues. Donald Blaskiewicz, M.D., is a neurosurgeon with a sub-specialty in complex spinal deformity surgeries, such as pediatric scoliosis and complex adult scoliosis surgeries. He has completed two fellowships in complex spine deformity surgery and minimally invasive spinal surgery. He is also a Fellow of both the American Board of Neurological Surgeons and the Scoliosis Research Society (the SRS). The parties do not dispute that Blaskiewicz is the only recognized and actively practicing SRS Fellow in Idaho; however, the parties dispute the significance of this fact.

Blaskiewicz was living and working in San Diego, California, when the Spine Institute successfully recruited him to Idaho. The Spine Institute's office is in Meridian, Idaho. Blaskiewicz moved to Idaho, and, on December 7, 2018, he and the Spine Institute entered into the PSA. The PSA contained a non-compete clause, which proscribed Blaskiewicz from "engag[ing] in the practice of medicine" within a fifty-mile radius of the Spine Institute's primary office location (with an explicit exception for the city of Caldwell) for a period of eighteen months following the end of his employment with the Institute, unless the Institute gave him written permission to do so. The PSA also contained an arbitration clause, which required that "any dispute arising out of or related to [the PSA] be settled by arbitration in Ada County, Idaho."

The Spine Institute terminated Blaskiewicz's employment on April 16, 2020. On May 1, 2020, Blaskiewicz filed a Complaint for Declaratory Judgment in district court to determine the enforceability of the PSA and what, if anything, he could do given the termination of his employment. Blaskiewicz asserted, among other arguments, that the non-compete provision in the PSA was against public policy. He requested that the district court enter judgment against the Spine Institute, declaring that the Spine Institute was unable to enjoin Blaskiewicz from accepting employment at St. Luke's, a regional hospital system with its headquarters and largest hospital

2

located in the Boise metropolitan area. Relying on the arbitration clause in the PSA, the Spine Institute moved to dismiss the complaint or, in the alternative, to stay the proceedings. However, the Spine Institute did not seek an order compelling arbitration, apparently because Blaskiewicz had not breached the PSA. In turn, Blaskiewicz moved for a speedy hearing on his request for a declaratory judgment.

On July 8, 2020, after a hearing on the matter, the district court concluded it had jurisdiction over the dispute and declined to either dismiss or stay the case. The district court also granted Blaskiewicz's motion for a speedy hearing. In response, the Spine Institute asked for discovery, noting that "there needs to be at least a little bit of discovery as to what it is that Dr. Blaskiewicz is really saying that his specialty is and whether that specialty is necessary in the area, and those kinds of things." The district court declined to allow discovery, stating: "Well, I think you make a good point that he has got to make a showing, but I think it would be more appropriate for the showing to be by affidavits that each side can submit." The district court then set an expedited briefing schedule on the sole issue of whether the non-compete provision was against public policy.

On July 22, 2020, Blaskiewicz moved for summary judgment, arguing that the PSA was against public policy and thus void as a matter of law. In support of his motion, he filed a single, eight-page declaration signed by himself.

On August 5, 2020, the Spine Institute filed its memorandum opposing Blaskiewicz's motion for summary judgment. (Neither this memorandum nor its accompanying motion is in the record.) Additionally, the Spine Institute filed four declarations, signed by: (1) Eric Taylor, counsel for the Institute; (2) Betsy Hunsicker, the Chief Executive Officer of West Valley Medical Center; (3) Jennifer Harris, the Administrator of the Spine Institute; and (4) Samuel Jorgenson, M.D., the President and sole shareholder of the Spine Institute. The Spine Institute also moved to strike portions of Blaskiewicz's declaration. Blaskiewicz then filed a reply brief.

After oral argument on the matter, the district court issued its memorandum decision and order granting Blaskiewicz's motion for summary judgment. The district court concluded that the non-compete provision was void because it was against public policy; it denied the Spine Institute's motion to strike; and it further awarded attorney fees against the Institute. The Spine Institute timely appealed.

## II.    STANDARD OF REVIEW

3

"This Court exercises free review over matters of law." *Borah v. McCandless*, 147 Idaho 73, 77, 205 P.3d 1209, 1213 (2009). "Justiciability issues, such as mootness, are freely reviewed." *State v. Barclay*, 149 Idaho 6, 8, 232 P.3d 327, 329 (2010).

Additionally, "[a]rbitrability is a question of law to be decided by the court." *Mason v. State Farm Mut. Auto. Ins. Co.*, 145 Idaho 197, 200, 177 P.3d 944, 947 (2007). "Thus, this Court exercises free review and may draw its own conclusions based upon the evidence presented." *Id.*

"[C]ontrol of discovery is committed to the sound discretion of the trial court." *Christiansen v. Potlatch #1 Financial Credit Union*, 169 Idaho 533, 540, 498 P.3d 713, 720 (2021).

> In evaluating whether a district court abused its discretion, this Court uses the four-part *Lunneborg* standard, asking whether the district court "(1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to the specific choices available to it; and (4) reached its decision by the exercise of reason." *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018).

*Id.*

"This Court exercises *de novo* review of a grant of summary judgment and the 'standard of review is the same as the standard used by the trial court in ruling on a motion for summary judgment.'" *AED, Inc. v. KDC Investments, LLC*, 155 Idaho 159, 163, 307 P.3d 176, 180 (2013) (quoting *Stonebrook Const., LLC v. Chase Home Fin., LLC*, 152 Idaho 927, 929, 277 P.3d 374, 376 (2012)).

> "On review, summary judgment is appropriate if 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Progressive Nw. Ins. Co. v. Lautenschlager*, 168 Idaho 841, 844, 488 P.3d 509, 512 (2021) (quoting I.R.C.P. 56(a)). The moving party carries the burden to demonstrate the absence of a genuine issue of material fact. *Farm Bureau Ins. Co. of Idaho v. Kinsey*, 149 Idaho 415, 419, 234 P.3d 739, 742 (2010) (citation omitted). This Court "construe[s] the record in favor of the nonmoving party, drawing all reasonable inferences in that party's favor." *Id.* If reasonable minds could differ as to the conclusions to be drawn from the record, summary judgment must be denied. *Id.*

*Taylor v. Taylor*, 169 Idaho 806, 812, 504 P.3d 342, 348 (2022).

### III. ANALYSIS

#### A. This appeal is not moot.

Before reaching the parties' arguments, we must consider whether this appeal is moot. "'An issue becomes moot if it does not present a real and substantial controversy that is capable of being concluded' by judicial relief." *Barclay*, 149 Idaho at 8, 232 P.3d at 329 (quoting *Koch v.*

*Canyon Cnty.*, 145 Idaho 158, 163, 177 P.3d 372, 377 (2008)). An issue does not present a real and substantial controversy if "any judicial relief from this Court would simply create precedent for future cases and would have no effect on either party." *Id.*

On appeal, Blaskiewicz does not argue this appeal is moot. However, he does point out that his employment was terminated by the Spine Institute on April 16, 2020, which means that the 18-month non-compete period expired on October 16, 2021. Blaskiewicz asserts that he "did not accept employment with St. Luke's or any competitor of [the Spine Institute] in the Treasure Valley" during the non-compete period.[1] Therefore, when the Spine Institute filed its opening brief with this Court on October 22, 2021, the non-compete was no longer in effect. However, even though the non-compete provision is no longer in effect, the district court awarded Blaskiewicz $49,888.50 in attorney fees pursuant to Idaho Code section 12-120(3). Section 12-120(3) allows a prevailing party in a civil action regarding a commercial transaction to recover reasonable attorney fees. I.C. § 12-120(3). If we were to conclude the district court erred in granting summary judgment (as we do below), Blaskiewicz would no longer be the prevailing party and would not be entitled to the attorney fees he was awarded below. Because this case presents a real and substantial controversy, we conclude it is not moot and we will reach its merits.[2]

**B. The district court had jurisdiction to decide whether the non-compete provision was enforceable.**

After Blaskiewicz filed his complaint, the Spine Institute moved to dismiss the case or, in the alternative, to stay the proceedings pending arbitration. The Spine Institute contended that the arbitration clause in the PSA provided that the sole way for Blaskiewicz to challenge the non-compete provision was through arbitration and, as such, the district court was without jurisdiction to consider Blaskiewicz's complaint. The arbitration clause of the PSA provided in relevant part:

> Except as to an action seeking an injunction pursuant to Section 11.4 [in the event the Physician violates a restrictive covenant, including the non-compete provision], the exclusive jurisdiction of which shall rest with a court of competent jurisdiction in the State of Idaho, any dispute arising out of or related to this Agreement shall be settled by arbitration in Ada County, Idaho.

---

[1] Blaskiewicz actually states that he did not accept employment "between April 16, *2021*[,] and October 16, 2021." (Italics added.) This appears to be a typographical error; given the context of the assertion, and the lack of any opposition to it, it should read "April 16, 2020."

[2] Our decision today that this case is not moot should not be read to preclude a finding of mootness upon remand, nor should it be read as a directive to find mootness. We simply hold that the case is not moot at this juncture on appeal.

At the hearing on July 8, 2020, the district court declined to dismiss the complaint or stay the proceedings. The district court noted that the Spine Institute's motion did not seek to compel arbitration: it only sought to dismiss or stay the litigation. Ostensibly relying on Idaho Code section 7-901 (the Uniform Arbitration Act) and *Borah v. McCandless*[3], 147 Idaho at 73, 205 P.3d at 1209, the district court concluded that it had jurisdiction to determine whether the non-compete clause was enforceable.

On appeal, the Spine Institute argues the district court erred in concluding it had jurisdiction over the non-compete issue. The Spine Institute asserts that both it and Blaskiewicz had the freedom to contract, and this Court should uphold their agreement to arbitrate.

Blaskiewicz responds that, because he sought a declaratory judgment, the district court was able to determine the enforceability of the PSA. He notes that, during the July 8, 2020, hearing, the Spine Institute conceded that arbitration would have been premature because Blaskiewicz had not breached the PSA. Blaskiewicz argues that the enforceability of the PSA "turns on the [question of] whether the non-competition provision violates public policy."

In reply, the Spine Institute points to the plain language of the arbitration clause, which states that "*any* dispute" other than the Institute seeking an injunction must be settled in arbitration. (Italics added.) The Spine Institute asserts that the district court erred in deciding to hear the case and not stay the case for arbitration.

Idaho Code section 7-901 provides:

> A written agreement to submit any existing controversy to arbitration or a provision in a written contract to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable and irrevocable, save upon such grounds as exist at law or in equity for the revocation of any contract.

I.C. § 7-901. "Under the [Uniform Arbitration Act], arbitration and agreements to arbitrate are encouraged and given explicit recognition as effective means to resolve disputed issues." *Lovey v. Regence BlueShield of Idaho*, 139 Idaho 37, 41, 72 P.3d 877, 881 (2003) (quoting *Loomis, Inc. v. Cudahy*, 104 Idaho 106, 108, 656 P.2d 1359, 1361 (1982)). "Arbitration generally offers an

---

[3] The transcript reflects that the district court referred to a case entitled "Vernon versus McCandless," not "*Borah* v. McCandless." The district court also stated that "Vernon versus McCandless" was authored by Justice Horton. There is no Idaho Supreme Court case entitled *Vernon v. McCandless*; however, *Borah v. McCandless* involved an arbitration clause and was authored by Justice Horton. 147 Idaho 73, 205 P.3d 1209 (2009). It therefore appears the district court was referring to *Borah* and either misspoke or was misheard (the hearing was held via Webex).

inexpensive and rapid alternative to prolonged litigation." *Id.* "It also serves to alleviate crowded court dockets." *Id.*

Conversely, "[t]he constitution of this state provides that '[t]he district court shall have original jurisdiction in all cases, both at law and in equity.'" *Borah*, 147 Idaho at 79, 205 P.3d at 1215 (quoting IDAHO CONST. art. V, § 20) (second alteration in original). "State courts have subject matter jurisdiction over traditional contract actions, a garden variety matter of state common law.*"* *Id.* (quoting *Sinclair & Co., Inc. v. Gurule*, 114 Idaho 362, 364, 757 P.2d 225, 227 (Ct. App. 1988)). "There is nothing in the Uniform Arbitration Act, I.C. §§ 7-901–922, that reflects legislative intent to deprive courts of subject matter jurisdiction in civil cases involving contracts containing an arbitration clause." *Id.*

We hold that the district court had jurisdiction to determine whether the non-compete provision was enforceable. *Borah*, which was decided in 2009, explicitly held that the Uniform Arbitration Act did not divest subject matter jurisdiction from district courts. 147 Idaho at 79, 205 P.3d at 1215. If the legislature disagreed with the Court's characterization of its intent, it could have sought to amend the Act. However, whether it could have dispossessed the district courts of their jurisdiction is a different question, which we leave unanswered for another day. In the intervening thirteen years since the *Borah* decision was released, the legislature has not done so. Therefore, we view *Borah* as settled law.

Whether a court has jurisdiction to hear a case is a different question than whether an arbitrability clause is enforceable. In general, "[w]hen entertaining a motion to compel or stay arbitration, the Court must limit its inquiry to whether there is an agreement to arbitrate." *Mason v. State Farm Mut. Auto. Ins. Co.*, 145 Idaho 197, 201, 177 P.3d 944, 948 (2007). However, the Spine Institute never moved to compel arbitration below. While the Spine Institute moved to dismiss the case or to stay the proceedings, it conceded that arbitration would have been premature. Without such a demand for arbitration, the Spine Institute cannot now complain that this controversy should have been arbitrated. *See Borah*, 147 Idaho at 78–79, 205 P.3d at 1214–15.

Therefore, we conclude that the district court had jurisdiction to determine whether the non-compete provision was enforceable.

**C. The district court erred in granting summary judgment in favor of Blaskiewicz.**

The non-compete provision of the PSA provided:

**11. RESTRICTIVE COVENANT.** Physician acknowledges and agrees that Physician is a key employee of Group, and that the restrictive covenants set forth

7

in this Section are necessary to protect Group's legitimate business interests within the meaning of Idaho Code § 44-2701 et seq. For purposes of this Section, the "Restricted Time" shall be during the term of this Agreement and for a period of eighteen (18) months after the termination of this Agreement, and the "Restricted Area" shall be the area within fifty (50) miles of Group's primary office location, but the Restricted Area" shall exclude Caldwell, Idaho ("Caldwell") and the geographic service area served by WVMC (the "WVMC Service Area") . . . . In no event shall this Section preclude Physician from performing Services within Caldwell or the WVMC Service Area.

**11.1 Non-Competition.** Physician shall not, within the Restricted Time and Restricted Area and without Group's express written consent, engage in the practice of medicine except as an employee of Group pursuant to this Agreement, or engage in, perform, or provide on behalf of any entity other than Group any of Physician's Services described in this Agreement, no shall Physician establish, contract with, have an ownership or investment interest in, or provide professional services to any entity or facility that competes with Group or otherwise provides the Services described in this Agreement.

. . .

**11.3 Scope of Restriction.** Physician agrees that this Section 11 is reasonable and necessary to protect the legitimate interests of Group, its patients, and its personnel, and that Group would be irreparably injured by Physician's breach of these obligations. If the scope or duration of any restriction is too broad to permit enforcement of such restriction to its full extent, then such restriction shall be enforced to the maximum extent permitted by law.

The district court concluded the non-compete provision of the PSA was void because it violated public policy. The district court noted that, while the Spine Institute had asserted it had "referral sources" it needed to protect, the Institute had not provided any factual support for its contention. The district court further reasoned that "[t]he people of Idaho and neighboring areas have a strong and real interest in being able to access the most skilled medical services available if they are suffering from a profoundly serious spinal condition that requires the unique skills of someone like Dr. Blaskiewicz." The district court also reasoned that Blaskiewicz's current patients had an interest in maintaining their continuity of care.

The district court further concluded that the non-compete provision was "more restrictive than necessary to serve the legitimate interest of the Spine Institute" because Blaskiewicz could perform surgeries and provide care that the Spine Institute could not: "complex intracranial vascular pathology, intracranial hemorrhages, brain tumors, hydrocephalus, congenital intracranial pathology, strokes, and head injuries." The district court concluded that, "[s]ince the Spine Institute does not perform those surgeries, it has no legitimate business interest in precluding Dr.

8

Blaskiewicz from doing them." Neither did the Spine Institute have proprietary procedures to protect, nor did it invest funds in training Blaskiewicz.

Additionally, the district court concluded that the non-compete provision was overbroad because it prevented Blaskiewicz from practicing medicine entirely. Pursuant to the PSA, Blaskiewicz was unable to provide "Physician's Services," which were defined in the PSA as

> clinical services that are reasonably and commonly within the scope of services provided by a physician specializing in orthopedic surgery consistent with Physician's licensure, training, and privileges, including but not limited to examining patients; performing medical and surgical procedures; prescribing medication or treatment; conducting rounds, consulting with other practitioners; providing call coverage; supervising midlevel and clinical support staff as requested by Group, etc.

The district court reasoned that entirely preventing Blaskiewicz from practicing medicine would negatively impact the public interest. The district court further concluded that, because the non-compete provision was unreasonable and void, liquidated damages were not available. The district court then granted summary judgment in Blaskiewicz's favor.

On appeal, the Spine Institute argues the district court erred in granting summary judgment because it submitted an "abundance of evidence" "demonstrating that the non-compete [provision] does not violate public policy and that there were plenty of qualified professionals in the Treasure Valley that perform the same services as Blaskiewicz[.]" The Spine Institute maintains that the reasonableness of an agreement not to compete is a fact-intensive inquiry. Relying on *Intermountain Eye and Laser Centers, P.L.L.C. v Miller*, 142 Idaho 218, 127 P.3d 121 (2005), the Spine Institute argues that the non-compete provision did not prevent Blaskiewicz from practicing all medicine because he could have simply paid the liquidated damages amount set forth in the PSA. The Spine Institute further asserts that Blaskiewicz did not argue, nor did the district court address, whether the duration or geographic territory of the non-compete were unreasonable. Additionally, the Spine Institute argues that even if the non-compete provision was not enforceable as written, the district court could have "blue-penciled" the agreement to make it better comport with public policy. Further, the Spine Institute asserts that preventing Blaskiewicz from working for a large hospital such as St. Luke's would benefit the public.

Blaskiewicz responds that the Spine Institute has not met its burden to establish it has a protectable business interest in precluding Blaskiewicz from practicing medicine. Blaskiewicz argues that the district court correctly determined the non-compete provision was overbroad

9

because there is no other neurosurgeon employed by the Spine Institute and the Institute has no protectable business interest in preventing Blaskiewicz from providing medical care that is not spine related. Blaskiewicz asserts that blue-pencilling would not save the provision from being unenforceable because no legitimate business interest exists. Further, Blaskiewicz contends that, due to his specialty and high level of training, enforcing the non-compete provision would harm the public and Blaskiewicz himself. Likewise, Blaskiewicz argues, enforcing the liquidated damages provision of the PSA violates public policy because the Spine Institute has not shown that $350,000 in damages is reasonable.

In reply, the Spine Institute points out that there is not a categorical ban on physician non-compete agreements in Idaho. The Spine Institute maintains that the non-compete provision is reasonable and, even if it is not, it could have been blue-penciled without needing a substantial rewrite. The Spine Institute notes that the PSA identifies Blaskiewicz as a "key employee" pursuant to Idaho Code section 44-2701, and he does not argue to the contrary.

> Covenants not to compete in employment contracts are "disfavored" and "strictly construed against the employer." *Freiburger v. J–U–B Engineers, Inc.*, 141 Idaho 415, 419, 111 P.3d 100, 104 (2005); *Stipp v. Wallace Plating, Inc.*, 96 Idaho 5, 6, 523 P.2d 822, 823 (1974). Non-compete provisions must be reasonable, which is to say they must not be more restrictive than necessary to protect a legitimate business interest, must not be unduly harsh and oppressive to the employee, and must not be injurious to the public. *Id.* at 420, 111 P.3d at 105.

*Intermountain Eye*, 142 Idaho at 224, 127 P.3d at 127.

The Spine Institute correctly points out that, several years after this Court's decision in *Intermountain Eye*, the Legislature enacted Chapter 27 of Title 44 in the Idaho Code, which governs "Agreements and Covenants Protecting Legitimate Business Interests." I.C. §§ 44-2701–04. Idaho Code section 44-2701 provides:

> A key employee . . . may enter into a written agreement or covenant that protects the employer's legitimate business interests and prohibits the key employee . . . from engaging in employment or a line of business that is in direct competition with the employer's business after termination of employment, and the same shall be enforceable, *if the agreement or covenant is reasonable as to its duration, geographical area, type of employment or line of business, and does not impose a greater restraint than is reasonably necessary to protect the employer's legitimate business interests*.

I.C. § 44-2701 (italics added). "'Legitimate business interests' shall include, but not be limited to, an employer's goodwill, technologies, intellectual property, business plans, business processes and

methods of operation, customers, customer lists, customer contacts and referral sources, vendors and vendor contacts, financial and marketing information, and trade secrets[.]" I.C. § 44-2702(2).

The legislature has further enacted a list of rebuttable presumptions with respect to whether the duration, geographical area, and type of employment are reasonable. "It shall be a rebuttable presumption that an agreement or covenant with a postemployment term of eighteen (18) months or less is reasonable as to duration." I.C. § 44-2704(2). "It shall be a rebuttable presumption that an agreement or covenant is reasonable as to geographic area if it is restricted to the geographic areas in which the key employee . . . provided services or had a significant presence or influence." I.C. § 44-2704(3). Additionally, "[i]t shall be a rebuttable presumption that an agreement or covenant is reasonable as to type of employment or line of business if it is limited to the type of employment or line of business conducted by the key employee . . . while working for the employer." I.C. § 44-2704(4).

Based on the district court's failure to even address the applicability of the relevant Idaho statutes, we hold that the district court erred in granting summary judgment in favor of Blaskiewicz. It should first be noted that, at no point in its memorandum decision did the district court cite or analyze the statutes governing non-compete agreements in Idaho. Rather, the district court relied on *Intermountain Eye* and *Freiburger*, both of which pre-date the enactment of these statutes. *See Intermountain Eye*, 142 Idaho 218, 127 P.3d 121; *Freiburger*, 141 Idaho 415, 111 P.3d 100. While *Intermountain Eye* and *Freiburger* remain instructive, the district court's failure to address the relevant statutes constitutes clear error. We also conclude that there were genuine issues of material fact that needed to be resolved through a trial before reaching the conclusion that the PSA violated public policy.

As for the geographic area, Blaskiewicz contends that, because he cannot practice in the Treasure Valley, he is essentially precluded from practicing anywhere in Idaho. The district court placed great weight on the contention that, if Blaskiewicz were not able to perform surgeries in the Boise and Meridian areas, many patients and their families would have to travel out of state for treatment. However, Jorgenson stated in his declaration that the reason those patients are referred out of state "is not because of the expertise or experience of the surgeon, but rather because of the superior facilities that involve a multi-disciplinary team that is available to manage the unique needs of the patient because those teams have a higher volume of those types of rare and complicated cases." Further, Jorgenson stated that even while Blaskiewicz was employed by the

11

Spine Institute, "Blaskiewicz personally referred such cases to specialized centers when he felt certain cases required treatment at a high volume care center, such as in Seattle or Salt Lake City." Taking these facts in a light most favorable to the Spine Institute as the non-moving party, we conclude that the Spine Institute raised a genuine issue of material fact that could not be resolved at summary judgment.

Additionally, the district court concluded the non-compete provision would not only bar Blaskiewicz from practicing the medicine he had while employed by the Spine Institute, but it would also bar him from practicing *any* kind of medicine. However, even if the provision is too broad, the district court had within its power the ability to limit or modify the non-compete provision through blue-penciling. As set-out in the statute: "To the extent any such agreement or covenant is found to be unreasonable in any respect, a court shall limit or modify the agreement or covenant as it shall determine necessary to reflect the intent of the parties and render it reasonable in light of the circumstances in which it was made and specifically enforce the agreement or covenant as limited or modified." I.C. § 44-2703. For example, it is possible that, under the proper factual findings, the district court could have modified the agreement to preclude Blaskiewicz from practicing only the type of medicine he did for the Spine Institute, i.e., complex spinal deformity surgery, yet allow him to perform other surgeries he is otherwise qualified to perform.

The district court also failed to address the liquidated damages clause, simply concluding that, because the non-compete provision was overbroad, liquidated damages were not available. Again, the district court should have considered whether it could modify the non-compete provision even if it was overbroad. *See* I.C. § 44-2703. The district court then should have considered the reasonableness of the liquidated damages with respect to the modified non-compete provision.

Finally, we note that the district court faulted the Spine Institute for failing to provide more information about its asserted "referral sources" when arguing it had legitimate business interests. While the Spine Institute certainly could have provided more information, Jorgenson stated in his declaration that "[r]eferral sources are critical to specialty practices" and the Spine Institute "would not be able to survive without its referral sources." Jorgenson further noted that, when new physicians are hired, the Spine Institute "introduce[s] them to all of our referral sources and they develop personal relationships with these referrals." Notably, in his declaration, Blaskiewicz also

12

recognized the importance of referral sources: "in order to have a financially meaningful practice in the Treasure Valley, one relies on a referral network that is generally garnered by physician networks supported by the hospital systems." "[I]f I am not affiliated with one of the major hospital systems, my practice in the Treasure Valley becomes impossible." Drawing reasonable inferences in favor of the Spine Institute, the Spine Institute has established a question of fact as to whether it has a legitimate business interest in its referral sources, even though there are no specifics as to the quantity or quality of those sources in the record.

In sum, we conclude that there are genuine issues of material fact such that summary judgment was inappropriate as to whether the non-compete provision was void as a matter of public policy or otherwise enforceable. Despite declining the Spine Institute's request for discovery, the district court made a number of specific factual findings based on the very limited record before it, which was inappropriate at the summary judgment stage. Therefore, the district court erred in granting Blaskiewicz's motion for summary judgment.

Because we hold the district court erred in granting summary judgment, we need not specifically address whether the district court erred in declining to order discovery.

**D. We vacate the award of attorney fees below.**

Because we conclude the district court erred in granting summary judgment, Blaskiewicz is no longer the prevailing party and, at this juncture, is not entitled to the attorney fees he was awarded below. Because we are remanding the case for further proceedings, "any determination of the prevailing party [would be] premature until the case is finally resolved." *Christiansen v. Potlatch #1 Financial Credit Union*, 169 Idaho 533, 544, 498 P.3d 713, 724 (2021) (quoting *City of McCall v. Buxton*, 146 Idaho 656, 667, 201 P.3d 629, 640 (2009)). Accordingly, we vacate the district court's award of attorney fees in favor of Blaskiewicz.

**E. Neither party is entitled to attorney fees on appeal.**

Both parties request attorney fees on appeal pursuant to Idaho Code section 12-120(3). Additionally, the Spine Institute requests attorney fees for the underlying district court case. Idaho Code section 12-120(3) provides:

> In any civil action to recover on an open account, account stated, note, bill, negotiable instrument, guaranty, or contract relating to the purchase or sale of goods, wares, merchandise, or services and in any commercial transaction unless otherwise provided by law, the prevailing party shall be allowed a reasonable attorney's fee to be set by the court, to be taxed and collected as costs.

13

The term "commercial transaction" is defined to mean all transactions except transactions for personal or household purposes. The term "party" is defined to mean any person, partnership, corporation, association, private organization, the state of Idaho or political subdivision thereof.

I.C. § 12-120(3).

Both parties agree that the dispute over the PSA is a "commercial transaction" within the meaning of section 12-120(3). However, although the Spine Institute prevailed in challenging the district court's grant of summary judgment before this Court, neither party is the ultimate "prevailing party" at this juncture. *See Christiansen*, 169 Idaho at 544, 498 P.3d at 724. Therefore, we decline to award the Spine Institute attorney fees either on appeal or for the proceedings below.

The Spine Institute further requests fees pursuant to Idaho Code section 12-121. Idaho Code section 12-121 provides that, "[i]n any civil action, the judge may award reasonable attorney's fees to the prevailing party or parties when the judge finds that the case was brought, pursued or defended frivolously, unreasonably or without foundation." I.C. § 12-121. However, Blaskiewicz did not bring his suit frivolously, unreasonably, or without foundation. There is little law in Idaho as to the enforceability of physician non-compete agreements, and it was not frivolous, unreasonable, or without foundation for Blaskiewicz to attempt to defend his livelihood. Therefore, we decline to award attorney fees to the Spine Institute under section 12-121.

## IV.    CONCLUSION

For the foregoing reasons, we vacate the district court's grant of summary judgment and remand the case for further proceedings. We award costs as a matter of right on appeal to the Spine Institute pursuant to Idaho Appellate Rule 40.

Chief Justice BEVAN, Justices BRODY, MOELLER and ZAHN CONCUR.